UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: GRAND JURY INVESTIGATION | : UNDER SEAL |
| | : |
| | : Grand Jury No.: 26-mc-12 (JEB) |
| | : |
| | : |
| | : |

### GOVERNMENT'S MOTION FOR RECONSIDERATION

The United States hereby respectfully moves the court to reconsider its order issued on March 11, 2026, quashing the two grand jury subpoenas directed to the Board of Governors of the Federal Reserve System ("the Board"). *See United States v. Slough*, 61 F. Supp. 3d 103, 107 (D.D.C. 2014) (noting that although the Federal Rules of Criminal Procedure do not expressly provide for motions for reconsideration in criminal cases, courts in this jurisdiction have regularly determined that such motions may be entertained); *see also United States v. Cabrera*, 699 F.Supp.2d 35, 40 (D.D.C. 2010) (collecting cases); *United States v. Dieter*, 429 U.S. 6, 8 (1976) (per curiam) (noting "the wisdom of giving district courts the opportunity promptly to correct their own alleged errors").

The government submits that the court's ruling applied an incorrect legal standard, erred with respect to certain signficant facts, and overlooked other relevant facts. The government maintains that no heightened evidentiary showing is or should be necessary at this preliminary stage of a grand jury investigation. However, even under the standard devised by the court, these facts demonstrate, contrary to the court's conclusion (at 26), that the government's investigation was not prompted by "zero evidence" of possible violations of 18 U.S.C. §§ 1031 (major fraud against the United States) and 1001 (false statements).

As an initial matter, the court applied an erroneous standard when it stated (at 14) that "the

1

RECEIVED
MAR 12 2026
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

Government's burden to justify a subpoena will depend on how much evidence of an improper purpose the movant [seeking to quash] puts forth." A subpoena should "ordinarily issue whenever there is a 'reasonable possibility that the category of materials the Government seeks will produce information relevant to the general subject of the grand jury's investigation.'" *In re Grand Jury Subpoena*, 175 F.3d 332, 399 (4th Cir. 1999) (quoting *R. Enters., Inc.*, 498 U.S. at 301). This remains true even where a subpoena recipient proposes a plausible theory of an ulterior motive. As the Fourth Circuit explained in *United States v. (Under Seal)*, 714 F.2d 347 (4th Cir. 1983), "[o]nce it is shown that a subpoena might aid the grand jury in its investigation, it is generally recognized that the subpoena should issue even though there is also a possibility that the prosecutor will use it for some purpose other than obtaining evidence for the grand jury." *Id.* at 350. This principle is not undermined by cases, cited in the court's opinion (at 13-14), where courts found an improper purpose based on a facial lack of connection between what was sought by a subpoena and its purported investigatory purpose. *See United States v. Wadlington*, 233 F.3d 1067, 1075 (8th Cir. 2000) (finding an improper purpose where witnesses were summoned to government offices a day before grand jury proceedings, provided counsel, and subjected "to a substantial amount of questioning" — none of which served the ostensible "purely logistical purposes" for issuing the subpoenas); *Ealy v. Littlejohn*, 569 F.2d 219, 229-30 (5th Cir. 1978) (finding the challenged subpoena sought "to intrude into [the recipient organization's] matters having not the remotest relationship" to the shooting that the grand jury was investigating). This court thus erred by requiring the government to present a heightened quantum of evidence at the outset of the grand jury investigation, where one purpose of the investigation was to probe whether such evidence exists. *See United States v. Dionisio*, 410 U.S. 1, 15 (1973) (grand jurors "may act on tips, rumors, evidence offered by the prosecutor, or their own personal knowledge"). The Board has never disputed that the subpoenas sought only materials directly related to the subjects of the grand

jury's investigation: the overbudget renovations — estimated at over $1 billion (3/3/26 Tr. 16-19), outrageous even by D.C. standards — as well as Chair Powell's congressional testimony.

We also specifically request the court to reconsider its decision given factual errors and omissions in the court's decision. As discussed below, each of these errors undermines the court's finding (at 16) that "[a] mountain of evidence suggests that the dominant purpose [of the subpoenas] is to harass [Chair] Powell and pressure him to lower [interest] rates." To the contrary, an accurate timeline of relevant events demonstrates, as we argued in our opposition ("Opp."), that the government conducted extensive due diligence, without publicity, in its efforts to address concerns about the Board's massively overbudget renovations and the discrepancies in Chair Powell's congressional testimony before resorting to the issuance of grand jury subpoenas. Specifically:

- The USAO's investigation into these subjects began in November 2025 (Opp. at 1). In December 2025, prior to contacting the Board, USAO attorneys reviewed all of the nearly 600 documents that the Board had previously provided to Congress (*id.* at 7). The USAO determined these documents to be unresponsive, given that most of them were from 2019-20, before the Board's substantially overbudget renovations had even begun (*id.*).

- The court relies (at 20) on the incorrect assertion that the Office of the Inspector General ("OIG") "audited the renovation several years ago and raised no concerns about fraud." This finding suffers from a similar timing problem. Contrary to the court's premise, the scope of that OIG report ended in 2020, more than a year before the renovations were approved. Thus, as the government argued in its opposition (Opp. at 2), the OIG audit "did not obviate [the] need to investigate" the possibility of fraud.

- On December 19, 2025, the USAO first emailed the Board with a request to meet in early January and discuss evidence that was potentially relevant to the investigation, a meeting that could

have avoided any need for a subpoena (Opp. at 2). The USAO also offered to provide additional details on a phone call to ensure a meeting would be productive (*id.*). The Board never responded to the email (*id.*).

- On December 29, 2025, the USAO sent a second email to the Board, again requesting to meet the following week, and discuss evidence that was potentially relevant to the investigation (Opp. at 2). The USAO again offered to provide additional details on a phone call to ensure a meeting would be productive (*id.*). The Board again never responded to the email (*id.*).

- On January 7, 2026, a grand jury investigation was opened concerning possible violations of 18 U.S.C. §§ 1031 (fraud against the United States) and 1001 (false statements). This happened before the White House gathering of U.S. Attorneys on January 8, 2026, and it undercuts the court's inference (at 6) of a causal link between that gathering and the subpoenas that were issued to the Board on January 9, 2026. Any such inference is further undercut by the fact, noted above, that the USAO first contacted the Board about its investigation three weeks earlier and began reviewing records a month earlier than that.

- The court also erred (at 9) by describing the subpoenas as "targeting [Chair] Powell" in support of its finding (at 2) of an improper purpose "to harass and pressure Powell." Both subpoenas were directed solely to the Board, not to Chair Powell. Indeed, one of the subpoenas focuses entirely on the Board's renovations and does not even mention Chair Powell by name.

- The court further erred (at 7) with respect to the litigation chronology, suggesting the government initiated court proceedings by filing a motion to compel when the Board did not timely respond to the subpoenas. To the contrary, up until the moment the Board filed its motion to quash

4

the subpoenas on January 29, 2026,[1] the government was engaged in good-faith discussions with the Board's counsel concerning the documents later sought by the subpoenas. In the midst of those good-faith discussions, to the USAO's surprise, the Board filed a motion to quash (Opp. at 3). The government then filed its motion to compel on January 30, 2026, only after the Board initiated litigation by filing its motion to quash.

For all of these reasons, the government respectfully asks the court to reconsider its order quashing the grand jury subpoenas, and to conduct its analysis anew by applying a correct legal standard that properly recognizes the broad investigatory prerogatives of the grand jury and by relying on a complete and accurate recitation of the relevant factual and procedural history.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

Steven Vandervelden
N.Y. Bar No. 2191542
601 D Street, N.W.
Washington, D.C. 20530
Steven.Vandervelden@usdoj.gov
(202) 252-7170

---

[1] The motion to quash was later re-filed on February 3, 2026, in order to comply with a formatting rule concerning footnotes.