\* **THIS PAGE LEFT INTENTIONALLY BLANK** \*

**SEALED MATTER ENCLOSED**

**AUTHORIZED PERSONS ONLY**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IN RE:
GRAND JURY SUBPOENA
█████████████████  and
█████████████████

BOARD OF GOVERNORS OF THE          March 3, 2026
FEDERAL RESERVE SYSTEM

            Petitioner,

     v.

                                    Washington, D.C.
UNITED STATES OF AMERICA,

            Respondent.
-------------------------------------------------------------
SEALED PROCEEDING
BEFORE THE HONORABLE JAMES E. BOASBERG
UNITED STATES DISTRICT COURT CHIEF JUDGE

APPEARANCES:

FOR THE PETITIONER:      Robert K. Hur, Esquire
                         Leah B. Grossi, Esquire
                         Nicholas Mecsas-Faxon, Esquire
                         King & Spalding, LLP
                         1700 Pennsylvania Avenue Northwest
                         Suite 200
                         Washington, D.C. 20006


FOR THE RESPONDENT:      George A. Massucco-LaTaif, Esquire
                         Timothy Cahill, Esquire
                         United States Attorney's Office
                         District of Columbia
                         601 D Street Northwest
                         Washington, D.C. 20004


REPORTED BY:             Tammy Nestor, RMR, CRR
                         Official Court Reporter
                         333 Constitution Avenue Northwest
                         Washington, D.C. 20001
                         tammy_nestor@dcd.uscourts.gov

The following proceedings began at 11:00 a.m.:

THE COURT:  Good morning, everyone.

THE COURTROOM DEPUTY:  Good morning, everyone.  Good morning, Your Honor.  Let the record reflect that this matter is sealed.  The courtroom is locked.  The participants in the gallery are here with permission from both sides.

We are here for the matter of 26-mc-12, petitioner, the Board of Governors of the Federal Reserve System versus the respondent, United States of America.

Beginning with counsel for the petitioner, if you would please approach the lectern and identify yourself for the record.

MR. HUR:  Good morning, Your Honor.  I'm Robert Hur with King & Spalding on behalf of the Board of Governors of the Federal Reserve System, and I'm joined by my fellow counsel at counsel table Leah Grossi and Nick Mecsas-Faxon, also of King and Spalding.

THE COURT:  Okay.  Welcome to all of you.

MR. MASSUCCO-LaTAIF:  Good morning, Your Honor.  On behalf of the United States, Assistant United States Attorney Andrew Massucco.  This is my first time before you, sir.  And with me at counsel table is Timothy Cahill.

THE COURT:  Okay.  Welcome to both of you.

I have reviewed the materials, and so we've got two

issues.  The first is the motion to disclose the briefing and then the merits of the motion to quash.

So, Mr. Massucco, let me hear from you on the -- let's start with the motion to disclose, which seems to me more straightforward than the motion to quash.  So why don't you approach the podium.

MR. MASSUCCO-LaTAIF:  Thank you, Your Honor.

THE COURT:  Sure.  It seems that the matters that the motion as redacted would disclose are, one, there's an investigation into the building renovations and Chairman Powell's testimony, and two, subpoenas have been issued seeking records relating to the renovations and the congressional testimony is what I meant earlier and that the records -- I'm sorry, and that the subpoenas have been issued related to both the renovations and the testimony.

MR. MASSUCCO-LaTAIF:  That is correct, Your Honor.

THE COURT:  Anything else that you think would be revealed by unsealing the motion that shouldn't be?

MR. MASSUCCO-LaTAIF:  Well, I think that's essentially it, Your Honor.  I think that we would want to stick to the 6(e) principles and keep these matters sealed.

THE COURT:  So the question then is, if a disclosure about these matters has been made by someone with authoritative knowledge of the matter, then you have lost the protection, right?

MR. MASSUCCO-LaTAIF:  Your Honor, if you are referring to the recipients of the subpoenas, they have every right to publish whatever they want because they are the recipients.  They are not bound by 6(e).

THE COURT:  Right.  But what I'm saying is that if this is now public, then what's the point of continuing to keep it sealed?

MR. MASSUCCO-LaTAIF:  Well, Your Honor, I do think that all of it is not public knowledge, and I think to the extent that we can preserve the 6(e), there is an investigation ongoing and we have an obligation to keep those matters --

THE COURT:  Right.  That's what I was just asking.  I just asked that the matters that have been disclosed are the existence of the investigation into the renovations and the testimony and the subpoenas seeking that matter.

MR. MASSUCCO-LaTAIF:  Yes, sir.

THE COURT:  So what I'm asking is is there anything else that you think would be disclosed, and you said no.  Is that still the case?

MR. MASSUCCO-LaTAIF:  Then I'm not understanding your question, Your Honor.  I think the matters that are pertaining to the fact that we have requested these materials, the facts of what the materials are, that we have requested ███████████████████████████████

███████████ related to the renovations.

THE COURT:  Right.  But I think the proposed redactions would cover the actual subpoenas themselves. Right?

MR. MASSUCCO-LaTAIF:  I would have to revisit the -- I looked at them, but I do have some suggestions of additional material that could be redacted, Your Honor.

THE COURT:  All right.  But you agree, though, that Federal Rule of Criminal Procedure 6(e)(6) says that matters shall remain sealed to the extent and as long as necessary to prevent the unauthorized disclosure of a matter occurring before a grand jury.

So the issues that I have just pointed out, namely the existence of the investigation and the fact of the subpoenas and the subject matter, that's been disclosed, but it's been disclosed not just by Chairman Powell, but also by Ms. Pirro, right?

MR. MASSUCCO-LaTAIF:  To some extent, Your Honor, yes.

THE COURT:  Well, she said on X, the United States Attorney's Office contacted the Federal Reserve on multiple occasions to discuss cost overruns and the Chairman's congressional testimony but were ignored necessitating the use of legal process.  And then on --

MR. MASSUCCO-LaTAIF:  Your Honor, what day was that?

I apologize.

THE COURT:  Sure.  That's January 12.

And then on Fox News, she had said she had made a legal request and said we're talking about a billion dollars in cost overruns as well as lying before Congress, so both of those things are issues that I looked at.  We issued legal process.

So I guess my point is what has not been disclosed by Chairman Powell and Ms. Pirro that you are attempting to keep secret here?

MR. MASSUCCO-LaTAIF:  Your Honor, I would say that to the extent that this is an ongoing matter, there will be matters that will -- in other words, if we open the floodgates now and say, oh, it's been disclosed, these materials have come in, then would that open the door, is the door already open that we disclose the results of those subpoenas?

I mean, we don't know what we're going to -- we don't know what we don't have.  The fact that we have asked for these things, that's fine.  That's out there.  That bullet can't be brought back into the chamber, so to speak.  Maybe not a good analogy, but it's already been sounded off.

To the extent that we can mitigate exposure and --

THE COURT:  Okay.  Right.  Just so we're clear, I'm not saying this entire grand jury investigation should now

be unsealed.  What the petitioner is asking for is unsealing of the pleadings, and I would also assume, and I will ask Mr. Hur, I would also assume my opinion that resolved the issue should be unsealed.

So they're not saying the case should be unsealed, everything that's produced should be unsealed, the testimony should be unsealed.  They are just saying that their motion to quash the opposition, the reply, and I would assume, but I'll ask, my opinion should be unsealed.

So I guess my question is, as to just those items, is there any further argument?

MR. MASSUCCO-LaTAIF:  There's no convincing argument, Your Honor, other than to say that a lot of materials that were contained in the pleadings in this case have nothing to do with this case.  And to sensationalize what's going on here to make it something other than it is is not the purpose of the proceedings.

THE COURT:  Okay.  So like what?

MR. MASSUCCO-LaTAIF:  Well, Your Honor, the entire history of how, according to the plaintiffs in this case, how it came to be that these subpoenas were issued.  It's the entire history of this case.

THE COURT:  But isn't that directly relevant to their argument that it's a vindictive prosecution?

MR. MASSUCCO-LaTAIF:  It's relevant to their

argument, but it simply isn't relevant to the consideration for this Court for the purposes of making this determination, Your Honor.

THE COURT:  Making which determination, the motion to quash or the motion to disclose?

MR. MASSUCCO-LaTAIF:  Motion to quash, Your Honor.

THE COURT:  Okay.  I thought you said that it is. It's relevant to the case because that's the information that supports their argument that the prosecution is vindictive, right?

MR. MASSUCCO-LaTAIF:  Well, Your Honor, it bears to be seen what this Court's ruling is going to be on that.

THE COURT:  Right, but the question --

MR. MASSUCCO-LaTAIF:  I would presume --

THE COURT:  Hold on.  You said it's not relevant -- it shouldn't be included because it sensationalizes it and it's not relevant to the issues.  But isn't it directly relevant?  I mean, that's their basis.

If they said, you know, we have a hypothesis that the President doesn't like the Chairman, and so, therefore, you should quash this, you know, you would laugh at that.  So what they are trying to do is put the evidence that supports their argument, right?

MR. MASSUCCO-LaTAIF:  I understand that when they put it in writing and they want to make that public knowledge,

that that's their position, Your Honor, but I'm referring to in the context of these proceedings and in the context of grand jury matters and in the context of Rule 6(e).  I mean, fine.  That is true that there are some theories that would permit the public to be aware of those things.  But to the extent that we can protect the integrity of matters filed in accordance with grand jury proceedings, we should do that.  And just because there have been statements one way or the other by parties, it's not opening the floodgates for every proceeding because then you ask yourself --

THE COURT:  I agree with you.  As I just said, it doesn't unseal the whole case.  The question is whether these pleadings and my opinion should be unsealed.

So are there other specific redactions beyond what the petitioner has proposed in the pleadings?

MR. MASSUCCO-LaTAIF:  Your Honor, I believe there were, but I can't give them to the Court at this moment.  If you would like, I could, following this proceeding, depending on the ruling, I could make those redactions known.

THE COURT:  All right.  Maybe you can discuss with Mr. Hur, and if there is -- if there are others that you can agree on, then I would be happy to hear them.  And if there are ones that you think should be redacted and the government -- I'm sorry, Mr. Hur does not, then you can let

me know about that.

MR. MASSUCCO-LaTAIF:  Absolutely.

THE COURT:  All right.  Let me just talk to Mr. Hur for a moment on this issue, and then I will be back to you.

MR. HUR:  Your Honor, my colleague Ms. Grossi will actually be addressing this particular motion.

THE COURT:  Okay.  Thank you.

MR. HUR:  Thank you.

MS. GROSSI:  Thank you, Your Honor.

THE COURT:  Okay.  So let me just ask you first, Ms. Grossi, do you -- I trust, but maybe I am assuming incorrectly, that you would also seek that my opinion resolving this, the motion to quash, would be disclosed.

MS. GROSSI:  Yes, Your Honor.

THE COURT:  Okay.  So do you want to respond to Mr. Massucco's arguments?

MS. GROSSI:  Yes, Your Honor.  The Board of Governors respectfully moves to partially unseal its motion to quash supporting memorandum, and then the arguments therein apply to the opposition reply and your order, Your Honor.

As this Court knows, Rule 6 of the Federal Rules of Criminal Procedure and the court's local rules as well as relevant case law set up two categories of material in connection with a grand jury investigation.  The first are matters occurring before the grand jury which are subject to

grand jury secrecy requirements under Rule 6(e)(2) for certain categories of individuals, as Mr. Massucco has mentioned.

And then second are the records relating to the grand jury proceedings that come before this Court which are not secret to the grand jury and must be kept under seal by default.

As the Court alluded to, these records must be kept under seal to the extent necessary to prevent disclosures of a matter occurring before the grand jury.  And although the U.S. Attorney's Office contends otherwise, the case law is crystal clear that a motion to quash falls into that second category.  It's ancillary to a grand jury proceeding and thus sealed by default and not a matter occurring before the grand jury.

Here, the motions and related papers could be partially unsealed because the limited scope of grand jury information contained within is so sufficiently widely known they have lost their character of grand jury secrecy.

THE COURT:  Is it enough that either the Chairman made statements about these or that Ms. Pirro made statements about these, or do we need both?

MS. GROSSI:  Your Honor, the case law is not crystal clear whether you need one or both.  I think it's just here, the evidence shows that both of those happened and that is

even more evidence why it is sufficiently widely known, because those authoritative disclosures were made by the government and a witness and target in this investigation.

THE COURT: If I rule in your favor, because if my -- the opinion -- I have an unsealed perhaps somewhat redacted opinion and I also order the disclosure or unsealing of the pleadings here, do you have an objection to staying that for 48 hours for the government to appeal the stay issue -- I'm sorry, to appeal the disclosure issue? Because obviously if I released it, that would sort of moot that question.

MS. GROSSI: Your Honor, we have no objection to that. The Federal Reserve Board moved to unseal this matter. It's not entirely urgent, but we wanted to make sure that these arguments were heard on the same day, and we have no objection to that 48-hour hold.

THE COURT: Okay. Thank you very much.

MS. GROSSI: Thank you, Your Honor.

THE COURT: All right. Mr. Massucco, let's talk about the merits.

MR. MASSUCCO-LaTAIF: Your Honor, if I could also briefly address one consideration with the Court?

THE COURT: Sure.

MR. MASSUCCO-LaTAIF: I do think the Court suggested what I believe the remedy would normally be in these kind of circumstances, which would be what was unsealed is the

opinion of the Court, and the pleadings remain under seal. And I would suggest that the Court could summarize the pleadings in its opinion in a way that would, one, keep true to the principles of 6(e), and not further open this matter up to the public view.

THE COURT:  Okay.  But is there any basis for not disclosing or unsealing the pleadings that you haven't argued before?

MR. MASSUCCO-LaTAIF:  I do not have that with me, Your Honor.  But I believe there is precedent that does say that the opinion is what's unsealed in matters similar to this.  I can certainly provide the Court something if you would like.

THE COURT:  Let's move to the merits here.  Now, let me first ask you -- I didn't see anything in your briefs regarding standing.  You are not arguing that the Board can't move to quash because it doesn't have standing, are you?

MR. MASSUCCO-LaTAIF:  No, Your Honor, we are not arguing standing, just as the plaintiffs aren't arguing that this is unduly burdensome.

THE COURT:  All right.  So let's take the scenario where the President or the U.S. Attorney says, There is somebody I don't like.  I don't like this guy for whatever reasons.  I don't like the look of him.  I never liked him,

just that I don't like him.  And so, you know what, we need to -- let's investigate him because maybe we can find something.  So I'll tell you what.  Let's subpoena his tax records.  Let's subpoena his bank records.  Let's subpoena his mortgage records.  Let's subpoena his Facebook account because maybe there's something there that will be evidence of a crime.  Should such a subpoena be quashed?

MR. MASSUCCO-LaTAIF:  As those limited facts have been provided to me, Your Honor, one, that's not the scenario that we are dealing with, clearly.  And two, there would have to be evidence of improper motive presented before the Court for the Court to make that determination similar to in Littlejohn where the subpoenas had nothing to do with what was being requested.

So yes, in a circumstance where it's merely, hey, we want to do a smear campaign on somebody, that would be what this Court would term as an improper purpose.  And in those circumstances, perhaps it would warrant quashing, but --

THE COURT:  Right.  So in other words, if the President or the U.S. Attorney or someone, Attorney General, or Deputy Attorney General, made statements that I don't like this person, this person is a terrible person, and we need to investigate the person because maybe there's something there, you agree that that, under R. Enterprises, would be a question of -- would be a situation where the

government was selecting a target of investigation out of malice or an intent to harass and that it should be quashed, right?

MR. MASSUCCO-LaTAIF:  Your Honor, I can't accept those facts because those aren't the facts I have before me. So I understand the hypothetical.  If there were --

THE COURT:  Hold on.  I'm sorry.  You are saying that you're not going to answer any hypothetical that I'm asking you or --

MR. MASSUCCO-LaTAIF:  I'm not saying that I won't --

THE COURT:  Okay.  So what's the answer to the hypothetical I just asked you?

MR. MASSUCCO-LaTAIF:  If the dominant purpose of subpoenas is to harass, if the dominant purpose of the subpoenas is to harass somebody, then I could see a situation where the Court would rule in favor of the petitioning party, if that was the dominant purpose.

THE COURT:  Okay.  That if the dominant purpose was to harass, if there was not a legitimate investigative basis, then you agree that it should be quashed?

MR. MASSUCCO-LaTAIF:  In certain circumstances, that would assume -- that would presumably be the ruling of the Court.

THE COURT:  And you also then agree that the test is whether the subpoena's sole or dominant purpose is improper?

That's the test, right?

MR. MASSUCCO-LaTAIF:  As I understand it, Your Honor.

THE COURT:  Okay.  So then why isn't this that?

MR. MASSUCCO-LaTAIF:  Well, the facts simply don't bear truth to that, Your Honor.

THE COURT:  Why not?

MR. MASSUCCO-LaTAIF:  Well, because the Fed Chair went before Congress on June 25, 2025 and made certain statements.  Now, the purpose of the hearing wasn't necessarily to discuss the $1.2 billion cost overrun in the building nor was it to discuss what additions or subtractions were being made to the building, but he made very certain statements.

So, one, you've got the $1.2 billion cost overrun, which I think the Court would agree is a considerable amount of money, and given government contracts, they are frequently wrought with fraud, fraud, waste, and abuse.

THE COURT:  Okay.  So do you think --

MR. MASSUCCO-LaTAIF:  So there's that, and then there's --

THE COURT:  Hold on.  So it's the fact that the building was over budget, right?

MR. MASSUCCO-LaTAIF:  That's part of the reason, yes, Your Honor.

THE COURT:  So how about the White House ballroom,

should that be investigated?  That's over budget.

MR. MASSUCCO-LaTAIF:  I wish we were in court for something like that, Your Honor, but today we are here on a different matter.

THE COURT:  Okay.  So they testified in Congress, and the renovations are over budget.  Those are the two bases, right?

MR. MASSUCCO-LaTAIF:  Those are the primary bases for what later became the investigation into Mr. Powell's statements and the cost overruns, yes.

THE COURT:  I mean, I'm sort of wondering as I sort of think about this, you know, what you think, and I'll be asking Mr. Hur the same question, what you sort of think about whether we should have a sliding scale here.  So what I mean is that the less evidence that you have, then the less the target has to show that there's an ulterior motive here, or conversely, the more evidence you have of misconduct, then the more they would have to show of an ulterior motive.  So what do you think of that as sort of a framework to be looking at this?

MR. MASSUCCO-LaTAIF:  I'm not sure that I -- I'm not sure I would have phrased it that way, Your Honor.  I think that there's a concern as to whether or not the dominant purpose of these subpoenas is for the purposes stated or is simply to harass.  And I think there's absolutely no

evidence that these subpoenas or this investigation is done with the purpose of harassment.

THE COURT:  On the contrary, there's a lot of evidence that this investigation is done for that purpose, but the question is is there also evidence of improper conduct.

And so, now, I certainly am not saying to the government that you need to have probable cause of criminal activity before you issue a subpoena.  The Supreme Court has made clear that's not the law and that the law is quite flexible and indulgent of grand jury investigations.

But you would agree that what you have given me in the papers and here is essentially nothing, right?  And so my question -- in other words, all you have told me here and in the papers is he testified before Congress.  Okay.  So what false statements did he make before Congress?

MR. MASSUCCO-LaTAIF:  Well, we don't know --

THE COURT:  Okay.

MR. MASSUCCO-LaTAIF:  -- is my first answer. However, there are certain areas that he addressed that caused concern.

THE COURT:  Okay.  And then what evidence is there of fraud or criminal misconduct in relation to the renovations?

MR. MASSUCCO-LaTAIF:  Again, we do not know at this time.  However, there are 1.2 billion reasons for us to look

into it.

THE COURT:  Okay.  So let me -- and is there evidence that you would proffer to me ex parte that is evidence of criminal activity in either the testimony or the renovations?

MR. MASSUCCO-LaTAIF:  I'm not at liberty -- no.  Your Honor, I would like to say that I could proffer you some things, but I don't think it's necessary.  I don't think -- I think the law is very clear on the purposes of grand jury.  You can even act on tips or rumors.  This circuit court has held that you don't need this probable cause, as you put it, you don't need this grand suspicion of illegal activity.  It can be something as simple as a tip or a rumor or something that just doesn't seem right.

And I would submit to the Court that a $1.2 billion overrun of cost is -- it doesn't seem right.  $1.2 billion, that's the GDP of some smaller countries, yet we are going to overlook it as, oh, it's just overrun because it's a historical building?  That doesn't seem right.  And are we prohibited from looking into it?  That would seem to, you know, put a chilling effect on any investigation the government ever did.  We can't look at it because they looked at it, it's okay, and we're going to take their word for it?  That just doesn't seem like that's the spirit of grand jury investigations.

THE COURT:  And I agree with you in the normal case, but the question is -- and that's why I sort of raised this sliding scale issue.  The question is, where you have strong evidence of ulterior motive, then shouldn't I require some evidence of misconduct beyond the fact that something was over budget?

MR. MASSUCCO-LaTAIF:  Your Honor, I would submit to you no, that's not what the case law says.  That's not what Dionisio holds.  That's not the standard for opening grand jury.  Now, it's unfortunate -- listen, it's unfortunate the back and forth that's been going on since 2017, as mentioned in the plaintiff's brief.  All of that is unfortunate, and it's a sideshow.

The issue here before this Court is actually a simple determination, and that is, were these grand jury subpoenas properly served.  And I submit to the Court that there's no evidence to the contrary.  There's no evidence that the motive for submitting these grand jury subpoenas and providing these grand jury subpoenas is anything other than trying to find the truth of the matter.  And we have a right to do that.

THE COURT:  Okay.

MR. MASSUCCO-LaTAIF:  And you know what?  He could be exonerated.  And that's the beauty of grand jury subpoenas. We could receive the information that we requested, and sure

enough, it exonerates everybody involved.  And wouldn't that be what this is all about and what we are supposed to be doing here?

THE COURT:  Okay.  Thanks so much.

Mr. Hur?

MR. HUR:  Yes.  Thank you, Your Honor.

THE COURT:  So you then also agree with the test, the sole or dominant purpose test?

MR. HUR:  We certainly do, Your Honor.

THE COURT:  Okay.  And so I've got the hypothetical that I asked your colleague Mr. Massucco, and I'm sure that you would tell me, yes, that if the evidence is that the whole basis of a subpoena is that the top administration official dislikes the target, that that would be quashed.

MR. HUR:  Assuredly so, Your Honor.  And our reading of the government's response in opposition to our motion to quash is that they don't dispute that either.  So I believe we agree on the applicability of the dominant improper purpose test and the fact that an improper purpose of the kind that we posit is amply supported by the factual record here would, indeed, be improper.

THE COURT:  Now, do we have -- although, are there any cases you can point me to where that's the factual context?

In other words, we've got cases which say you

22

can't -- for example, ones that I know you are well aware of, that you can't use a grand jury to essentially obtain discovery on an indicted case that goes to trial, plenty of cases of those.  But do we have cases where it's sort of personal animus that would be a parallel here?

MR. HUR:  Your Honor, the bottom-line answer to the direct question that you have posed to me is no, we do not have a published case that is squarely on all fours directly apposite to the facts present here.

But, as the Court just alluded to, we have cases such as the United States -- or I believe it's In Re: Grand Jury relating to the Simels matter out of the Second Circuit.  I believe that was authored by Judge Feinberg.  And Judge Friendly incidentally was also on that panel.

(There was an interruption by the court reporter.)

MR. HUR:  I'm so sorry.

We also have the In Re: Grand Jury Subpoena case out of the Fourth Circuit in 1999 authored by Judge Luttig.

But you're right, Your Honor, the improper purpose in each of those cases was, I suppose, more procedural in nature pursuing evidence for trial purposes through a grand jury subpoena or pursuing evidence for purposes of a civil investigation through a criminal grand jury subpoena.

So I would posit, Your Honor --

THE COURT:  But -- sorry.  Go ahead.

MR. HUR:  I would posit, Your Honor, that those cases, though, stand for the following principle.  They build upon the R. Enterprises cases by saying if the government has an improper purpose in issuing a grand jury subpoena, the subpoena must be quashed.  And, Your Honor, an improper purpose is an improper purpose.  If the improper purpose is procedural in nature and tries to put checks on the government from using a procedural vehicle to pursue evidence that they could otherwise pursue legitimately through other means, that's an improper purpose.

We believe that that check that the courts must apply to grand jury process must apply to cases like the instant one where it's not a procedure foul that we are trying to place.  It's a substantive one that goes directly to the heart of the Federal Reserve's independence when it comes to setting monetary policy.

THE COURT:  And do you think that -- is the improper purpose -- maybe the distinction collapses, but do you think the improper purpose is a harassing of an individual, Chairman Powell, who members of the administration may not like for whatever reason, or is it to pressure the Board to effect its monetary policy?

MR. HUR:  In a word, Your Honor, both.  And the way that we frame it in our briefs and as I will try to frame it accurately and as articulately as possible here is that the

purpose of the subpoenas is to further the pressure campaign against the Federal Reserve Board as an entity, and Chair Powell in particular, who has emerged as something of a lightening rod here, that is interfering with the President's request for lower interest rates.

He clearly has very strong political motives to try to get lower interest rates, but because of the safeguards that have been erected by Congress around the Federal Reserve's independence when it comes to setting monetary policy, he can't get it.

The President is extraordinarily powerful.  When it comes to pretty much any other power in the executive branch, he's got it.  But Congress has denied this particular power to him, and it frustrates him to no end.

And he has tried other alternative vehicles to exercise his power indirectly, including by, for example, trying to remove Governor Lisa Cook for cause.  That case is, of course, under litigation, and we will see what the Supreme Court says about it.  But we say that the criminal investigation and the grand jury subpoenas issued to the Federal Reserve Board on ████████ are yet another attempt at an end run to further the pressure campaign against the Board and against Chair Powell.

And what's at stake here really, Your Honor, is that every single time that a member of the Federal Open Markets

Committee decides I'm going to cast my vote, should I leave rates where they are, should I vote to lower them, should I vote to raise them, if I vote to lower them, how much, the way that Congress intended for the system to work is that each and every member of the FOMC when they are casting their votes should have the data and their God's honest rigorous best analysis.  It should be completely shielded from the influence of elected politics.

THE COURT:  All right.  So what's your response on my sliding scale that I am fabricating out of whole cloth, but it seems to me a reasonable test?  What do you think of that?

MR. HUR:  Your Honor, I think there is a lot of merit to it.  I will say that the specific cases that we cite including the Sitzmann case out of this district, Judge Friedman's opinion applying the dominant and proper purpose test, as well as the Simels case out of the Second Circuit and the In Re: Grand Jury case out of the Fourth Circuit, they don't expressly apply anything like a sliding scale test.

But I will say, and what brought this to mind was, when the Court, towards the beginning of this hearing, used the words vindictive prosecution, that brought to mind the Court's recent opinion in the United States v. Carey case.  I believe that was issued on January 20.

And the Court there, of course, was addressing, I would say, adjacent principles of trying to assess the government's intent.  What really were they trying to get at?  Were they doing what was legitimate in terms of enforcing the federal laws, the criminal laws, or did they have an improper purpose in doing so?

So we read recently and studied carefully the Court's sliding scale analysis there, and I believe there were also echoes of presumptions.  And the Court acknowledged it's a tough thing to overcome the presumption of regularity here, but where there is evidence to overcome it, then the burden shifts to the government.

And I would say that under the construct of a sliding scale, Your Honor, the factual record that's presented before the Court here is so abundant of improper purpose. We have Exhibit A that is a hundred public documented statements, so we've got --

THE COURT:  I'm certainly well aware of that.  But do you think then, because there is such abundant evidence, is your argument that the government has to show more in such a circumstance in order to obtain the subpoena?  In other words, if they had -- I'm sorry, they have obtained the subpoena but to survive a motion to quash?

In other words, if they had less ulterior motive, wouldn't then -- don't you think it's proper that I would

request or require less of them in terms of evidence of improper activity?

MR. HUR:  That does make some intuitive sense, Your Honor, some common sense.  But I will hasten to say that happily for the Court here and for the Federal Reserve Board here, we have a case where there's abundant evidence about ulterior motive and improper purpose, and we also have a great derth, we have a great paucity, of evidence in support of the fact that the alternative explanations for the issuance of these subpoenas is actually borne of a legitimate law enforcement interest.

THE COURT:  So you mention Carey, and Carey talks about vindictive prosecution.

MR. HUR:  Yes, Your Honor.

THE COURT:  Now, that's a case that was charged, not indicted because it's an information, and then the defense moved to dismiss the case for vindictive prosecution, and that is a recognized route that defendants can take.

Now, why shouldn't we follow that route here?  And what I mean is there is no such thing as a motion to dismiss an investigation for vindictive purpose, so why shouldn't we wait for the -- wait to see how the investigation plays out?  If there's an indictment, then you can move to dismiss for vindictive prosecution.

MR. HUR:  Your Honor, two thoughts in response to

that question.  The first is, yes, there is a recognized vehicle in the law by way of a motion to dismiss prosecution for its vindictiveness, but happily for the Federal Reserve Board here and for Chair Powell, we don't have to wait because the law already establishes the principles laid out in R. Enterprises and in the Sitzmann case and in the other cases that we have laid out, which is, if the government is acting with an improper purpose that is the sole or dominant purpose when it issues grand jury subpoenas, those subpoenas should be quashed.

Stepping back for a second, Your Honor, more practically, I can say that having represented entities and individuals who have been subject to the Eye of Sauron when it comes to criminal investigation and being subject to criminal process, it is an extraordinarily terrifying experience.

Criminal prosecution and investigation is among the most coercive powers that the government has within its arsenal of tools in order to get what it wants.

And so I would submit, Your Honor, that the reason that we have cases like R. Enterprises and Sitzmann, the dominant and proper purpose test, is because in a free society that is governed by our Constitution and laws, the answer should not be to citizens, well, sorry you're under investigation, but you're just going to have to tough it

out, wait until they indict you, and that's when you can vindicate your rights.

That is not consistent with the cases, and that's not consistent with principles of a country that we want to live in.  And again --

THE COURT:  So let me --

MR. HUR:  I'm sorry, Your Honor.

THE COURT:  Let me ask you then -- and I understand your distinction there.  It's the point I would expect you to make on that.  In terms of the breadth of your logic here, if the argument is the subpoena should be quashed, the subpoenas should be quashed because they are part of an improper investigation -- I mean, your argument is that the subpoenas are improper, right?

MR. HUR:  Correct, Your Honor.

THE COURT:  But the argument is not that there's something wrong with the form or the content, and as the government says, you are not making some unreasonableness or oppressiveness argument.  You are arguing essence.  This is an improper investigation, and therefore, the subpoenas issued pursuant to it are improper.

So if that's the case, would you argue then that any subpoena issued pursuant to this investigation should be quashed?

MR. HUR:  I suppose that I could conceive of fact

patterns where -- I guess I'll fashion my own hypothetical here, Your Honor, and see what you think of it.

I suppose if the Court reached a decision to rule from the bench to move -- to grant the motion to quash the subpoenas today, that perhaps tomorrow, over the ensuing days or weeks, there could be some series of events that come to pass that would somehow sort of be a cleansing or a purifying set of events that hit reset on the government's improper purpose.

And I'm going to be a little silly here, but say there was a dead body found in Chair Powell's chambers. You know, could there be a criminal investigation at that point and subpoenas issued? I think that would be a much harder case for us to move the subpoenas that resulted from that discovery.

THE COURT: Right. It seems, again, on the sliding scale, no matter how much dislike or criticism or alternative motive that the government has, if there's a dead body, then you've got a tough argument that the grand jury should investigate.

MR. HUR: Indeed, Your Honor.

THE COURT: Okay. Thank you, Mr. Hur.

MR. HUR: Thank you, Your Honor.

THE COURT: Mr. Massucco, if you have a couple minutes of rebuttal, I will give you that. So anything you

want to respond to by Mr. Hur?

MR. MASSUCCO-LaTAIF:  I'm always hesitant to give something in rebuttal, Your Honor, when --

THE COURT:  Okay.  I'm not requiring it.

MR. MASSUCCO-LaTAIF:  In my 25 years of doing this, the times I have been written up most by the First Circuit Court of Appeals is in my rebuttal arguments because I don't realize I have already won.

THE COURT:  All right.

MR. MASSUCCO-LaTAIF:  So with that in mind, Your Honor, I would simply say that there is nothing that would suggest that these -- look, it's a crazy world we live in. We have access to -- this is the first time, I think, that we have government officials communicating this way and by social media and doing things like this.  But that certainly doesn't suggest that this investigation has any improper roots or -- you know, it doesn't matter whether or not President Trump likes Jerome Powell as a person.  That's not how we do our business in the Department of Justice, and this certainly -- as I said before, he could be completely exonerated.  We just need to see.

THE COURT:  Okay.

MR. MASSUCCO-LaTAIF:  Thank you.

THE COURT:  Thanks so much.

So I will issue an opinion on this, and I'll try and

get this out certainly within a week.  But I'm pretty sure that the disclosure issue will be in the petitioner's favor.  So I would ask you, Mr. Massucco, to consult with Mr. Hur and Ms. Grossi.  And if there are other pieces of those briefs that you think that should be redacted, to consult with them, and then you folks can submit to me any further redactions, or if there's a dispute, you can offer -- you can give me competing versions.  And then I will certainly, since my opinion then will be a public opinion, I will keep it under seal for, say, 48 hours to give you a chance if you want to appeal just the disclosure question.

MR. MASSUCCO-LaTAIF:  Thank you, Your Honor.

Is there a time frame for us to consult with the plaintiffs in this case?

THE COURT:  I would ask you to get something to me by 5:00 tomorrow.

MR. MASSUCCO-LaTAIF:  Thank you, Your Honor.

THE COURT:  Okay.  Great.  Thanks very much, counsel.  Appreciate it.

(The hearing concluded at 11:45 a.m.)

- - -

C E R T I F I C A T E


    I hereby certify that the foregoing is an accurate transcription of the proceedings in the above-entitled matter.



3/4/26                      s/ Tammy Nestor
                              Tammy Nestor, RMR, CRR
                              Official Court Reporter
                              333 Constitution Avenue NW
                              Washington, D.C. 20001
                              tammy_nestor@dcd.uscourts.gov