**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| *In re* Grand Jury Subpoenas | Case No. 1:26-mc-00012-JEB<br><br>**<u>FILED UNDER SEAL</u>** |

**<u>THE BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM'S
OPPOSITION TO THE U.S. ATTORNEY'S OFFICE'S
MOTION FOR RECONSIDERATION</u>**

Jeffrey S. Bucholtz (Bar ID 452385)
JBucholtz@kslaw.com
Robert K. Hur (Bar ID 496269)
RHur@kslaw.com
Leah B. Grossi (Bar ID 1024022)
LGrossi@kslaw.com
Nicholas A. Mecsas-Faxon (Bar ID 1779269)
NMecsas-Faxon@kslaw.com
KING & SPALDING LLP
1700 Pennsylvania Avenue NW
Suite 900
Washington, D.C. 20006
Telephone: (202) 737-0500
Facsimile: (202) 626-3737

Andrew Z. Michaelson (*pro hac vice*)
AMichaelson@kslaw.com
KING & SPALDING LLP
1290 Avenue of the Americas
14th Floor
New York, NY 10104
Telephone: (212) 556-2100
Facsimile: (212) 556-2222

*Attorneys for the Board of Governors of the
Federal Reserve System*

The Motion for Reconsideration ("Motion" or "Mot.") filed by the U.S. Attorney's Office ("USAO") does not even mention—let alone meet—the demanding legal standard that applies to the extraordinary relief it seeks.  Reconsideration is warranted only where there has been "an intervening change in controlling law," there is "new evidence," or there is "a need to correct clear error or prevent manifest injustice." *United States v. Ballenger*, __ F. Supp. 3d __, 2025 WL 3467569, at *1 (D.D.C. Dec. 3, 2025) (Boasberg, C.J.) (quoting *United States v. Booker*, 613 F. Supp. 2d 32, 34 (D.D.C. 2009)).  The Motion does not try to clear these high hurdles, resorting instead to mischaracterizations of the Court's opinion ("Op."), ECF No. 23, and the record on which it rests.

The Court's opinion, however, is clear and correct.  A grand jury subpoena should be quashed if prosecutors issued it for a dominant improper purpose; the USAO agreed that that standard governed; and the Board of Governors of the Federal Reserve System (the "Board") met that standard by presenting overwhelming evidence that the USAO issued subpoenas to the Board (the "Subpoenas") for the dominant purpose of pressuring Chair Powell and the Federal Open Market Committee ("FOMC") to set monetary policy the way the President wants—a purpose the USAO has never disputed is improper as a matter of law given Congress's careful establishment of the Federal Reserve as independent in setting monetary policy.  Accordingly, the Court should deny the USAO's Motion.

## I.    A MOTION FOR RECONSIDERATION SHOULD BE GRANTED ONLY IN EXTRAORDINARY CIRCUMSTANCES THAT ARE NOT PRESENT HERE.

The bar for reconsideration is high.  Motions for reconsideration "may be entertained in criminal cases . . . [under] the same standard of review that applies to . . . motions filed in civil cases pursuant to Rule 59(e) of the Federal Rules of Civil Procedure." *United States v. Cabrera*, 699 F. Supp. 2d 35, 40 (D.D.C. 2010).  Under that "'stringent' standard," *People for Ethical*

1

*Treatment of Animals, Inc. v. U.S. Dep't of Agric.*, 60 F. Supp. 3d 14, 17 (D.D.C. 2014) (Boasberg, J.) (quoting *Ciralsky v. CIA*, 355 F.3d 661, 673 (D.C. Cir. 2004)), the USAO "must demonstrate either that (1) there has been an intervening change in controlling law, (2) there is new evidence, or (3) there is a need to correct clear error or prevent manifest injustice," *Ballenger*, 2025 WL 3467569, at *1 (quoting *Booker*, 613 F. Supp. 2d at 34).  Motions for reconsideration "are disfavored and relief from judgment is granted only when the moving party establishes extraordinary circumstances." *Cabrera*, 699 F. Supp. 2d at 41 (cleaned up).

No extraordinary circumstances warrant reconsideration here.  The USAO neither points to an intervening change in law nor offers new evidence.  Reconsideration could therefore be justified only if needed "to correct [a] clear error or prevent manifest injustice." *Ballenger*, 2025 WL 3467569, at *1.  "[A] 'clear error' means that the prior judgment is dead wrong—that is, it strikes the Court as wrong with the force of a five-week-old, unrefrigerated dead fish." *Bratya SPRL v. Bed Bath & Beyond Corp.,* 2025 WL 721770, at *2 (D.D.C. Mar. 6, 2025).  The Court's opinion is no dead fish.  It articulates the correct legal standard and properly applies it to the striking facts and circumstances of this case.  Far from showing that the Court's opinion is "clear error," the Motion identifies no error or injustice at all.

## II.    THE COURT APPLIED THE CORRECT LEGAL STANDARD.

As this Court recognized, under well-established precedent, a court should quash a grand jury subpoena if "the subpoena's sole or dominant purpose is improper." Op. 11.  The USAO's Motion contends the Court "applied an incorrect legal standard," Mot. 1, but the USAO cannot now challenge the legal standard applied by the Court—the dominant purpose test—because the USAO agreed this standard was correct.  In its opposition to the Board's motion to quash, the USAO agreed that "a subpoena may be quashed if the dominant purpose for its issuance was improper."  ECF No. 26 ("USAO Opp.") at 5.  And at the hearing, the USAO reiterated its

agreement with this legal standard.  ECF No. 28 ("Mar. Hearing Tr.") at 15:24–16:2 (The Court: "And you also then agree that the test is whether the subpoena's sole or dominant purpose is improper?  That's the test, right?" AUSA Massucco-LaTaif: "As I understand it, Your Honor."); *see also id*. at 21:7–9.  The Court thus observed in its opinion that "the parties themselves expressly agreed at the hearing that this standard should govern."  Op. 11.  The USAO cannot now change its position just because it lost.  *See Mo. Dep't of Soc. Servs. v. U.S. Dep't of Health & Hum. Servs.*, 2019 WL 4709685, at *3 (D.D.C. Sept. 26, 2019) (Boasberg, J.) ("[C]ourts rely on the parties to frame the issues for decision, particularly where the party is the United States, the richest, most powerful, and best represented litigant." (cleaned up)).[1]

Trying another tack, the USAO mischaracterizes the Court's opinion as requiring the USAO to make a "heightened evidentiary showing" and "to present a heightened quantum of evidence at the outset of the grand jury investigation . . . ."  Mot. 1, 2.  The Court did no such thing. On the contrary, the Court made clear that "the movant bears the burden of showing an improper purpose," and it characterized the Board's burden as "heavy."  Op. 14.  The Court then reasoned that when the movant puts forth compelling evidence of a dominant improper purpose that, if uncontradicted, would "overcome[] the presumption [of regularity]," the Government may respond with evidence showing it had a proper purpose and the improper purpose was not the dominant one.  Op. 14–15.

The Court's reasoning is thoroughly uncontroversial and consistent with well-established law.  Weighing any evidence offered by the Government against evidence offered by the party challenging the subpoena is how courts have applied the dominant purpose test in other cases,

---

[1] The Court did not limit itself to applying the legal standard the parties had asked it to apply; it correctly explained that "overwhelming authority" supports the dominant purpose test. Op. 9–11 (citing cases from ten circuits).

irrespective of the outcome. *See, e.g.*, *In re Grand Jury Subpoena*, 175 F.3d 332, 339 (4th Cir. 1999) (considering government affidavits against movant's evidence of improper purpose); *In re Grand Jury Subpoena Duces Tecum Dated Jan. 2, 1985 (Simels)*, 767 F.2d 26, 30 (2d Cir. 1985) ("The government's claim that the grand jury subpoena was not previously issued because the [prosecutor] was otherwise occupied is insubstantial and plainly inadequate to rebut the defendant's strong showing that the government's dominant purpose [was improper]."); *United States v. Sitzmann*, 74 F. Supp. 3d 96, 124 (D.D.C. 2014) ("Because the government has provided legitimate reasons for its post-indictment appearances before the grand jury as recognized by the case law, and as Sitzmann has not met his burden of establishing that the grand jury process was abused, the Court rejects his grand jury abuse argument."), *aff'd*, 893 F.3d 811 (D.C. Cir. 2018).

Indeed, courts routinely weigh evidence submitted by both parties in a variety of other contexts. *See, e.g.*, *McGrath v. Clinton*, 674 F. Supp. 2d 131, 141 (D.D.C. 2009) ("In making this determination [regarding pretext], courts must weigh all the relevant evidence adduced by both the plaintiff and the defendant."), *aff'd* 666 F.3d 1377 (D.C. Cir. 2012). That is common sense: The Court's observations about the USAO's failure to make *any* showing that the Subpoenas had a proper purpose did not mean that the USAO had failed to present a "heightened quantum of evidence." On the contrary, as the Court observed, the Board's strong showing of an improper dominant purpose stood entirely uncontradicted.

Nor did the Court act on a mere "plausible theory" of an improper purpose, Mot. 2; it found instead a "mountain" of evidence of improper purpose, Op. 16. The Court also correctly observed that the USAO offered no evidence whatsoever of a proper purpose and indeed refused the Court's invitation to submit such evidence or explanation *ex parte*. Op. 21; Mar. Hearing Tr. 19:2–14.

The Court cannot and should not accept the USAO's invitation to write the dominant purpose test out of the law. To be sure, a "facial lack of connection" between what a subpoena seeks and what the Government says it is investigating, Mot. 2, requires quashing a subpoena. But so does a dominant improper purpose. As the Court explained, "the Government is not necessarily acting for a proper purpose just because it seeks information relevant to a criminal investigation." Op. 14; *see In re Grand Jury 95-1*, 59 F. Supp. 2d 1, 8, 15–16 (D.D.C. 1996) (analyzing relevance and improper purpose challenges separately). And the Supreme Court has instructed that "the powers of the grand jury are not unlimited and are subject to the supervision of a judge," *Branzburg v. Hayes*, 408 U.S. 665, 688 (1972), and that "[g]rand juries"—let alone federal prosecutors—"are not licensed to . . . select targets of investigation out of malice or an intent to harass," *United States v. R. Enters., Inc.*, 498 U.S. 292, 299 (1991).

In short, the USAO waived any challenge to the legal standard applied by the Court, which was correct in any event.

## III.    THE COURT'S FACTUAL ANALYSIS WAS ALSO CORRECT.

The Court's application of the law to the facts was straightforward: "A mountain of evidence suggests that the dominant purpose is to harass Powell to pressure him to lower rates," Op. 16, and "the Government has offered no evidence whatsoever that Powell committed any crime other than displeasing the President," *id.* at 2. As explained above, the Court "invited the Government to submit any additional justifications for the subpoenas *ex parte*" and the USAO declined to do so, resting on its brief (which made only vague references to unidentified "discrepancies" in testimony and noted that complex building renovations are experiencing cost overruns) and asking the Court to take its word for it that its purpose was proper. *Id.* at 21; Mar. Hearing Tr. 20:2–25. The Court proceeded to apply the agreed-upon dominant purpose test and

concluded that, "in light of all the evidence," "the *only* reasonable inference" is that the Subpoenas were issued for a dominant improper purpose. *Id.* at 22 (emphasis added).

In a series of bullet points, the USAO's Motion claims "factual errors and omissions" in the Court's opinion. Mot. 3. None of these points demonstrates "clear error" or "manifest injustice." *Ballenger*, 2025 WL 3467569, at *1.

Four of the USAO's points (bullets 1, 3, 4, and 5) simply repeat assertions made in prior briefing regarding the timing of its investigation. There is nothing new here, and certainly nothing compelling. As the Court's opinion recognized, the President has been waging a pressure campaign against Chair Powell for *years* in order to try to force interest rates lower, and he has been directing prosecutors to target his enemies throughout his second term. *See* Op. 4–6, 16–20. The timing lines up: the USAO opened its investigation last November (bullet 1), reviewed documents the Board had provided to Congress (bullet 1),[2] contacted the Board in December (bullets 3 and 4), and opened a grand jury investigation (bullet 5), all as part of its improper campaign to pressure and harass Chair Powell and the Board. *See* ECF No. 27 ("MTQ Reply") at 14–16. The focus here is on the Subpoenas because this Court has a duty to supervise the use of grand jury powers to shield against prosecutorial abuse, *see, e.g.*, *Branzburg*, 408 U.S. at 688; *United States v. Calk*, 87 F.4th 164, 168 (2d Cir. 2023), but the USAO's purpose has been improper from the outset.

---

[2] The Motion contends that the Court failed to credit the USAO for reviewing "nearly 600 documents" that the Board had previously provided to the Senate Banking Committee, Mot. 3, but apparently the USAO could not identify a single page or even a line from those 600 documents to cite as a basis for conducting a criminal investigation of Chair Powell's testimony or the renovations, Op. 14–15. That is entirely consistent with the fact that a supermajority of the members of the Committee that requested the same documents have stated publicly that they see no need for the USAO's investigation. *See* Op. 21–22.

For the same reason, it is irrelevant that the USAO may have opened a grand jury investigation one day before U.S. Attorney Pirro attended a meeting where the President scolded his U.S. Attorneys for taking too long to investigate his enemies (bullet 5), *see* Sadie Gurman, C. Ryan Barber & Josh Dawsey, *Trump Blasted Federal Prosecutors at White House Event, Calling Them Weak,* Wall St. J. (Jan. 13, 2026, at 17:46 ET), https://tinyurl.com/428f8pm4.  The USAO's purpose was improper when it opened its grand jury investigation, just as it was when the USAO issued the Subpoenas two days later.  *See* MTQ Reply 14–16.  And the Court relied on plenty of additional evidence linking the President's harassment and pressure campaign to the USAO's improper purpose, *see* Op. 19–20; the President's desire to get rid of Chair Powell and pressure the Federal Reserve to set monetary policy to his liking, and his demand that his Department of Justice pursue his political enemies, did not suddenly become known for the first time at the January 8 White House meeting.

The notion that the Court misjudged the "timeline," Mot. 3, requires ignoring the Court's opinion, which set out months and months of attacks launched by President Trump against the Federal Reserve and Chair Powell before the USAO took any action, including that Chair Powell must be "put out to pasture" (August 1, 2025); that President Trump was encouraging a "major" legal action to be taken against Chair Powell (August 12, 2025); and that Powell "should be sued" (November 19, 2025).  Op. 1–2, 5–6, 16–20.  The USAO does not dispute that the 100 statements catalogued in Exhibit 1 to the Board's reply brief were made by President Trump (or, in a few cases, his deputies).  Nor does the USAO suggest that those statements are not to be taken seriously.  The evidence of improper purpose thus long preceded the issuance of the Subpoenas.

The USAO also takes issue (bullet 2) with the Court's reference to the Office of Inspector General ("OIG") 2022 audit report, *see* Op. 20–21 (citing letter from Chair Powell to the Senate

7

Banking Committee, July 14, 2025, which is also Ex. C to the Motion to Quash), asserting that "the scope of that OIG report ended in 2020, more than a year before the renovations were approved." Mot. 3. That is incorrect. The Executive Summary of the 2022 OIG Report, a public document, states that the Inspector General reviewed 33 modifications that impacted the project's "cost" from April 2019 to March 2020, and the OIG's audit work was conducted from "June 2020 to November 2021," including staff interviews and a review of an October 2021 modification to the change order process. Office of Inspector General, *Board of Governors of the Federal Reserve System*, *The Board's Contract Modification Process Related to Renovation Projects Is Generally Effective* (Feb. 2, 2022), https://tinyurl.com/353vscfe. Moreover, as the July 14, 2025, letter to the Senate Banking Committee reported, Chair Powell invited the OIG back to take a "fresh look" at the renovations, and that audit is ongoing. MTQ Ex. C at 4 (the July 14 letter is cited at Op. 20). In the face of repeated inspections by the OIG and an invitation by Chair Powell for the OIG to return, the USAO offered the Court nothing whatsoever when invited to identify any evidence warranting a criminal investigation.

The USAO also contends (bullet 6) that the Subpoenas were not "targeted" at Chair Powell because they were issued to the Board and one of the two Subpoenas does not specifically name him. That argument is frivolous. Any suggestion that the two Subpoenas, issued by the same office on the same day, had two distinct purposes is belied by the record demonstrating that President Trump's attacks on Chair Powell started with interest rates in his first term and then included charges that the renovation costs showed he was "incompetent" or "corrupt"—all in an effort to force Chair Powell to resign or to face legal action. Op. 18–19 ("[T]he President spent years essentially asking if no one will rid him of this troublesome Fed Chair . . . [and] then suggested a specific line of investigation into him . . . proposed by a political appointee with no

role in law enforcement who hinted that it could be a way to remove Powell.").  Even after an explicit invitation, the USAO could offer no basis for suggesting that the testimony or the renovations merited a criminal investigation.  *See* Op. 21; Mar. Hearing Tr. 19:2–14.  And it would ask the Court "'to exhibit a naiveté from which ordinary citizens are free'" to suggest that the renovations subpoena issued contemporaneously to the Board that Powell chairs has nothing to do with him.  *See Dep't of Com. v. New York*, 588 U.S. 752, 785 (2019) (quoting *United States v. Stanchich*, 550 F.2d 1294, 1300 (2d Cir. 1977) (Friendly, J.)).  Both Subpoenas were designed to force Chair Powell's exit and to undermine the independence of the Federal Reserve.  *See, e.g.*, Mar. Hearing Tr. at 24:4–24:8 (discussing pressure from Subpoenas on Chair Powell and other members of the FOMC); Op. 3–4, 8–9 (explaining importance of Federal Reserve's statutory independence and Board's argument that subpoenas threaten that independence).

Finally, the USAO notes (bullet 7) that the Board filed its original Motion to Quash before the USAO filed its Motion to Compel.  So what?  Which side "initiated court proceedings" first, Mot. 4, is irrelevant to the Court's analysis and to the purpose of the Subpoenas—which the USAO issued weeks before either filing.  This argument only illustrates the enormous distance between the USAO's Motion and the legal standard governing motions for reconsideration.

## CONCLUSION

The Board respectfully requests that this Court deny the USAO's Motion for Reconsideration.

Dated: Washington, D.C.
March 25, 2026

Respectfully submitted,

*/s/ Robert K. Hur*
Jeffrey S. Bucholtz (Bar ID 452385)
JBucholtz@kslaw.com
Robert K. Hur (Bar ID 496269)
RHur@kslaw.com
Leah B. Grossi (Bar ID 1024022)
LGrossi@kslaw.com
Nicholas A. Mecsas-Faxon (Bar ID 1779269)
NMecsas-Faxon@kslaw.com
KING & SPALDING LLP
1700 Pennsylvania Avenue NW
Suite 900
Washington, D.C. 20006
Telephone: (202) 737-0500
Facsimile: (202) 626-3737

Andrew Z. Michaelson (*pro hac vice*)
AMichaelson@kslaw.com
KING & SPALDING LLP
1290 Avenue of the Americas
14th Floor
New York, NY 10104
Telephone: (212) 556-2100
Facsimile: (212) 556-2222

*Attorneys for the Board of Governors of the Federal Reserve System*

## CERTIFICATE OF SERVICE

I hereby certify that, on March 25, 2026, I caused the foregoing Opposition to the U.S. Attorney's Office's Motion for Reconsideration to be filed with the Clerk for the U.S. District Court for the District of Columbia using the Court's online ECF system.  I further certify that I caused the same to be served via e-mail, in accordance with the parties' written consent, on the following members of the United States Attorney's Office for the District of Columbia:

G. A. Massucco-LaTaif, Assistant U.S. Attorney
George.Massucco@usdoj.gov

Gregg Maisel, Assistant U.S. Attorney
Gregg.Maisel@usdoj.gov

Timothy Cahill, Assistant U.S. Attorney
Timothy.Cahill@usdoj.gov

Carlton J. Davis, Special Counsel
carlton.davis@usdoj.gov

Steven Vandervelden, Special Counsel
steven.vandervelden@usdoj.gov

/s/ Robert K. Hur
Robert K. Hur