**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

In re Grand Jury Subpoenas Nos.
███████████ & ███████████

BOARD OF GOVERNORS OF THE
FEDERAL RESERVE SYSTEM,

      Petitioner,

      v.

UNITED STATES OF AMERICA,

      Respondent.

Miscellaneous Action No. 26-12 (JEB)

## MEMORANDUM OPINION AND ORDER

On March 11, 2026, this Court issued a Memorandum Opinion and Order that quashed the Government's subpoenas directed to the Board of Governors of the Federal Reserve System. In re Grand Jury Subpoenas, --- F. Supp. 3d ---, 2026 WL 710202 (D.D.C. Mar. 13, 2026) (opinion publicly released on March 13, 2026). The Government promptly moved for reconsideration of that decision. See ECF No. 21 (Mot. Recon.). As its cursory brief neither offers new evidence nor points to any material error, the Court will deny the Motion.

The standard for reconsideration is a demanding one: the movant must show that there has been an intervening change in controlling law, new evidence, or a need to correct clear error or prevent manifest injustice. United States v. Ballenger, 811 F. Supp. 3d 123, 127 (D.D.C. 2025). Yet the Court need not hide behind that standard to dispose of this Motion. The Government's arguments do not come close to convincing the Court that a different outcome is warranted.

1

The Government first maintains that "the court's ruling applied an incorrect legal standard." Mot. Recon. at 1. It notes that, as a rule, prosecutors need not produce evidence of a crime before they can issue a grand-jury subpoena. Id. at 1–2. After all, the point of the subpoena is to discover evidence that the Government does not yet have. United States v. R. Enters., Inc., 498 U.S. 292, 297 (1991). So far, so good.

The problem with the Government's position, however, is that it captures only half the picture — and not the half that the Court's Opinion rested on. As the Opinion discusses, two separate standards are relevant here. First, the Government has broad power to issue a grand-jury subpoena. United States v. Dionisio, 410 U.S. 1, 13 (1973); R. Enters., 498 U.S. at 297, 301; Doe v. DiGenova, 779 F.2d 74, 80 (D.C. Cir. 1985); Grand Jury Subpoenas, 2026 WL 710202, at *5. The subpoena must be relevant — which is itself a low bar, R. Enters., 498 U.S. at 301 — but the Government need not justify it under any heightened standard. The Court would therefore not quash a subpoena solely because the Government offered no pre-investigation evidence of a crime, nor does the Opinion suggest that courts should. Still, the subpoena power "is not unlimited" and may not be abused. United States v. Calandra, 414 U.S. 338, 346 (1974). One of those limits is the second, independent standard: the subpoena's dominant purpose cannot be improper. Grand Jury Subpoenas, 2026 WL 710202, at *5.

The Government actually agrees with both halves of that framework, even though it conflates them. It loudly proclaims the first half in its Motion for Reconsideration. See Mot. Recon. at 2. And it expressly argued for the second in its briefing on the Motion to Quash. See ECF No. 26 (Gov't Opp.) at 5 ("[A] subpoena may be quashed if the dominant purpose for its issuance was improper."). Indeed, at the hearing before the Court, it again acknowledged that the improper-purpose standard governs all grand-jury subpoenas. See ECF No. 28 (Transcript)

at 15:24–16:2.  The Court's Opinion set forth in detail that this is indeed the standard, Grand Jury Subpoenas, 2026 WL 710202, at *5, and the Government's latest Motion does not argue otherwise.

It was as part of this second, independent inquiry that the Court considered what basis the Government had to suspect Chair Powell of a crime.  As the Court explained, the controlling legal question is what these "subpoena[s'] dominant purpose" is: pressuring Powell to lower rates or resign, or pursuing a legitimate investigation opened because the facts suggested wrongdoing.  Id. at *7.  Resolving that question requires probing whether the Government's asserted basis for the subpoenas — suspicions of fraud and lying to Congress — is colorable or tenuous.  That inquiry, in turn, means asking how much evidence there is to back up the Government's assertions.  While evidence of wrongdoing therefore cannot be required by the first standard discussed above, it is highly relevant to the second.

The Government has missed this distinction.  It makes arguments and cites cases about its broad subpoena power and insists that it does not need evidence, but it ignores the fact that its total lack of a good-faith basis to suspect a crime is relevant to the second, separate question of the subpoenas' true purpose.  See Mot. Recon. at 2.

The Government finally addresses purpose in an argument that lasts all of one sentence.  It thinks that a subpoena has an improper purpose only if there is "a facial lack of connection between what was sought by a subpoena and its purported investigatory purpose."  Id.  Not so. Whether a subpoena serves the Government's investigation goes to its relevance, which is a separate question from whether its purpose is improper.  Grand Jury Subpoenas, 2026 WL 710202, at *7 (laying this out).  In short, nothing in the Motion for Reconsideration changes the

3

Court's view of the appropriate legal framework, most of which the Government does not even contest.

Having struck out on the law, the Governmnent next tries the facts.  It sets out seven bullet-point paragraphs that purportedly catalogue factual mistakes in the Court's Opinion.  See Mot. Recon. at 3–5.  Neither singly nor in concert do these alter the outcome.  Most constitute different inferences that the Government would like the Court to draw, but they do not offer anything new.

First, the Government emphasizes that before it issued these subpoenas, it asked the Board to meet and discuss the investigation.  Id. at 3–4.  Yet that detail does not change the relevant timeline.  President Trump spent years attacking Powell, suggested investigating him, and the U.S. Attorney's Office complied.  Grand Jury Subpoenas, 2026 WL 710202, at *9.  If prosecutors launched this investigation to harass and pressure Powell, that is hardly changed by asking him to sit for questioning before issuing these subpoenas.

Next, the Government asserts that the Inspector General's audit of the Board's renovations ended in 2020, so he might have missed the massive fraud that was unleashed later.  See Mot. Recon. at 3.  Its characterization of the audit seems inaccurate.  An audit into the renovations' contracts lasted until November 2021, see Bd. of Governors of the Fed. Rsrv. Sys., The Board's Contract Modification Process Related to Renovation Projects Is Generally Effective 14 (2022), https://perma.cc/5HZW-QD7Z, and in July 2025, Powell told the leaders of the Senate Banking Committee that he had "asked the Board's IG to take a fresh look at the project."  ECF No. 5-4 (Powell Letter) at 4.  More importantly, the point is irrelevant.  By poking holes in the audit's coverage, the Government seems to be implying that the audit might have overlooked the fraud.  If that is right, then the Government is welcome to bring to the Court's

attention the evidence that the Inspector General neglected, as the Court has repeatedly invited it to do — and as the Government has repeatedly demurred.  See, e.g., Grand Jury Subpoenas, 2026 WL 710202, at *10.  The Government's fundamental problem is that it has presented no evidence whatsoever of fraud.  Even ignoring the audit entirely would not change that glaring fact.

Next, the Government fusses with a timeline.  It wants to make sure that the Court knows that it first opened this grand-jury investigation into a prominent target of the President's, then the President berated a gathering of U.S. Attorneys for not prosecuting his opponents more aggressively, and then it issued these subpoenas.  See Mot. Recon. at 4.  The Court is puzzled about why the Government thinks that it helps its case to quibble over the details of the President's demanding that prosecutors target people he dislikes.  Either way, the Court's Opinion related this exact sequence of events.  Grand Jury Subpoenas, 2026 WL 710202, at *3 ("[A]fter th[is] investigation opened, the President reportedly excoriated a gathering of U.S. Attorneys for not moving faster to prosecute his opponents.  The next day, our U.S. Attorney's Office served two subpoenas on the Board.") (citation omitted).  Regardless, the Court's finding of an improper purpose did not rest on this isolated statement of the President's but on the preceding years of pressure and harassment of which it formed a part.

The Government then points out that its subpoenas were "directed solely to the Board, not to Chair Powell," and one subpoena "does not even mention Chair Powell by name."  Mot. Recon. at 4.  The implication seems to be that these subpoenas therefore cannot have been meant to pressure Powell.  Yet one subpoena asked for records about Powell's testimony to see whether he was guilty of lying to Congress.  See ECF No. 5-2 (Testimony Subpoena) at ECF p. 4.  The other sought records about the Board's renovations, see ECF No. 5-3 (Record Subpoena) at ECF

p. 4, whose high costs the President has repeatedly tried to pin on Powell.  See ECF No. 14-1 (Trump Statements), ¶¶ 70, 79, 83, 85, 87, 98.  No matter whom the subpoenas were addressed to, then, it was clear whom they sought dirt on: Powell.

Finally, the Government mentions that the Board filed a Motion to Quash before the Government filed a parallel Motion to Compel.  See Mot. Recon. at 5.  As the Board points out, see ECF No. 31 (Opp.) at 9, it is unclear why that tidbit is supposed to matter.  Having declined to file any Reply, the Government does not explain the point further.

The Court therefore ORDERS that the [21] Motion to Reconsider is DENIED.

/s/ James E. Boasberg
JAMES E. BOASBERG
Chief Judge

Date:  April 3, 2026

6