# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **In re Grand Jury** | : | |
| **Investigation** | : | |
| | : | **No. 26-mc-12 (JEB)** |
| | : | |
| | : | |

## MOTION OF THE UNITED STATES TO VACATE MEMORANDUM OPINIONS ON MOOTNESS GROUNDS

Pursuant to Fed. R. Civ. P. 60(b) and this Court's inherent equitable powers, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully moves this Court to vacate the March 13 and April 3, 2026, Memorandum Opinions issued in the above-captioned case. In support of this Motion, the United States submits the following points and authorities:

## FACTUAL BACKGROUND

1. On March 13, 2026, this Court released a Memorandum Opinion granting the Motion of the Federal Reserve Board to quash two subpoenas issued by the grand jury in this matter. *In re Grand Jury Subpoenas Nos. [Redacted] & [Redacted]*, No. MC 26-12 (JEB), ___ F. Supp. 3d ___, 2026 WL 710202 (D.D.C. Mar. 13, 2026) (ECF 23). The Court concluded that the dominant purpose of the subpoenas was to "harass and pressure" Jerome Powell, the Chair of the Federal Reserve. *Ibid*. at *1.

2. The United States sought reconsideration on March 12, 2026 (ECF 21). This Court denied the motion to reconsider in a Memorandum Opinion and Order issued on April 3, 2026 (ECF 33).

3. On April 24, 2026, the United States Attorney announced her intention to close the grand-jury investigation in the above-captioned case so that the Office of the Inspector General for the Federal Reserve Board could review documents and interview witnesses concerning the reported billion-dollar cost overruns in the renovation project at the Federal Reserve headquarters. https://x.com/USAttyPirro/status/2047679907312939264?s=20. The term of Grand Jury 25-5 has also ended, and the panel will sit only for special sessions in two unrelated matters.

4. For the reasons outlined in the March 12, 2026, motion for reconsideration (ECF 21), the United States does not agree with this Court's decision to quash the subpoenas. However, even in the event of a successful appeal to the D.C. Circuit, the United States cannot obtain meaningful relief because the investigation has closed. When "an event occurs while a case is pending on appeal that makes it impossible for the court to grant any effectual relief," an appeal will be dismissed as moot. *Church of Scientology of California v. United States*, 506 U.S. 9, 12 (1992). *See Flast v. Cohen*, 392 U.S. 83, 95 (1968) (explaining that a case is no longer justiciable "when the question sought to be adjudicated has been mooted by subsequent developments"); *United States v. Weston*, 194 F.3d 145, 148 (D.C. Cir. 1999) (appeal moot where defendant refused to submit to competency evaluation and government withdrew its motion to compel him to do so);

*United States v. Garde*, 848 F.2d 1307, 1309 (D.C. Cir. 1988) ("Insofar as there is no relief that could be granted by this court, the appeal must be dismissed as moot.").

5. In light of these developments, the United States respectfully moves this Court to vacate the opinions and orders issued in the above-captioned case.

<u>ARGUMENT</u>

Vacatur is appropriate to prevent "a judgment, unreviewable because of mootness, from spawning any legal consequences." *United States v. Munsingwear, Inc.*, 340 U.S. 36, 40-41 (1950). Courts ordinarily invoke this "established practice" in civil cases which have become moot pending a decision on the merits of the appeal. *Id*. at 40 n.2. Indeed, the D.C. Circuit recently applied the *Munsingwear* rule in litigation surrounding the issuance of subpoenas in a criminal case. *See In re Subpoena Issued to Fed. Bureau of Investigation*, No. 25-5118, 2025 WL 2180348, at *1 (D.C. Cir. Jul. 30, 2025) (because the appeal "has become moot due to the dismissal of the underlying criminal proceeding," appellate court vacated the order and opinion of the district court) (citing, inter alia, *Munsingwear*, 340 U.S. at 39-40).[1]

Although the *Munsingwear* rule is usually employed at an appellate level, the underlying principles in *Munsingwear* apply in the district court. For example, Fed. R. Civ. P. 60(b) permits a district court to set aside a judgment for "any other reason justifying relief from the operation of a

---

[1] Some courts have treated litigation over grand-jury subpoenas as ancillary civil matters. *See Lee v. Johnson*, 799 F.2d 31, 36-38 (3rd Cir. 1986) (separate action to quash grand-jury subpoena considered civil action); *In Re Grand Jury Proceedings (Manges),* 745 F.2d 1250, 1251 (9th Cir. 1984) (holding that appeals from orders concerning grand-jury subpoenas are civil actions governed by Fed. R. App. P. 4(a)). *But see, e.g, In re Grand Jury Subpoenas, 89-3 & 89-4, John Doe 89-129*, 902 F.2d 244, 247 (4th Cir. 1990) (treating proceeding as criminal matter); *In re Grand Jury Subpoena Duces Tecum dated January 2, 1985 (Simels)*, 775 F.2d 499 (2d Cir. 1985) (a motion to quash a grand-jury subpoena was not a civil action in the context of a claim for costs).

judgment." Rule 60's omnibus clause gives this Court power to vacate its judgments "whenever such action is appropriate to accomplish justice," *Klapprott v. United States*, 335 U.S. 601, 615 (1949), where "extraordinary circumstances" exist, *Ackerman v. United States*, 340 U.S. 193, 199 (1950). And, historically, "[t]he general power of the court over its own judgments, orders, and decrees, in both civil and criminal cases, during the existence of the term at which they are first made, is undeniable." *Ex parte Lange*, 85 U.S. 163, 167 (1873), cited in *United States v. DaSilva*, 715 F. Supp. 3d 116, 121 (D.D.C. 2024).

Vacatur is especially appropriate where a published decision in a moot case addresses important constitutional issues. *See Clarke v. United States*, 915 F.2d 699, 708 (D.C. Cir. 1990) (en banc) ("Vacatur appears particularly appropriate where retention of the precedent creates a gratuitous conflict with a co-equal branch of government."); *Matter of City of El Paso, Texas*, 887 F.2d 1103, 1106 (D.C. Cir. 1989) (emphasizing that avoidance of constitutional questions was one of the bases for vacatur). *See generally Ashwander v. TVA*, 297 U.S. 288, 341 (1936) (Brandeis, J., concurring) (courts should adhere to long-established practice of avoiding constitutional issues where case may be resolved on other grounds).

Here, the Court's decision to quash the subpoenas implicates important separation-of-powers concerns. Conducting federal criminal investigations—including deciding whether a case should be referred to a grand jury—is the "'special province' of the Executive," and the "Attorney General and United States Attorneys retain 'broad discretion'" in exercising those powers "as the President's delegates to help him discharge his constitutional responsibility to 'take Care that the Laws be faithfully executed.'" *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (citing, *inter alia, Wayte v. United States*, 470 U.S. 598, 607 (1985)). Accordingly, like grand juries, federal prosecutors are entitled to a strong "'presumption of regularity'" in their decision-making, and "'in

the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties.'" *Ibid*. (quoting *United States v. Chem. Found., Inc.*, 272 U.S. 1, 14-15 (1926)). Vehement disagreements among political adversaries should not overcome the strong presumption of prosecutorial and grand jury regularity. Intruding into the grand jury's functions weakens the "body . . . regarded as a primary security to the innocent against hasty, malicious, and oppressive persecution," *Wood v. Georgia*, 370 U.S. 375, 390 (1962), and would be "destructive of the workings of our grand jury system" and "hostile to its historic status." *United States v. Johnson*, 319 U.S. 503, 513 (1943).

Furthermore, the Court's decision implicates complicated First Amendment issues. The Court attributed President Trump's public statements to the United States Attorney's decision to open the grand-jury investigation and held that those statements established an intent on the part of the Executive Branch to harass Chairman Powell. In support, the Court cited "at least 100 statements" over many years by "the President or his deputies" criticizing Chair Powell. *In re Grand Jury Subpoenas Nos. [Redacted] & [Redacted]*, 2026 WL 710202, at *9-*11. Some presidents have a more acidic pen and pugnacious style than others. But it cannot be that the President effectively forfeits his constitutional authority to faithfully execute the criminal laws through grand-jury investigations if he has been especially critical of targets or witnesses, any more than a person can somehow protect himself against federal grand-jury investigations by ramping up criticism of the President or other Executive Branch officials. *Cf. R.A.V. v. City of St. Paul*, 505 U.S. 377, 392 (1992) (explaining that government may not "license one side of a debate to fight freestyle, while requiring the other to follow Marquis of Queensberry rules").

To be sure, the United States Attorney's decision to close the grand-jury investigation has precipitated the mootness concerns in this case. Courts may decline to vacate an opinion when

5

mootness has resulted due to the deliberate action of the non-prevailing party. *See generally U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18, 25 (1994) ("[w]here mootness results from settlement" rather than "'happenstance,'" the "losing party has voluntarily forfeited his legal remedy ... [and] thereby surrender[ed] his claim to the equitable remedy of vacatur."). However, the United States Attorney's decision to close the grand-jury investigation should not dissuade the Court from exercising its discretion to vacate "in view of the nature and character of the conditions which have caused the case to become moot.'" *Id*. at 24. The D.C. Circuit has "interpreted *Bancorp* narrowly." *Humane Soc. of U.S. v. Kempthorne*, 527 F.3d 181, 185 (D.C. Cir. 2008) (granting motion to vacate where Department of Interior removed the gray wolf from the endangered-species list and thereby mooted the appeal filed by the federal government). "*Bancor*p does not erect a categorical bar to vacatur when voluntary action moots the case; instead, courts must apply equitable principles flexibly." *Samma v. Dep't of Def.,* 136 F.4th 1108, 1115 (D.C. Cir. 2025) (quoting *Bancorp*, 513 U.S. at 18-19 (Jackson, J., concurring). The Supreme Court has emphasized that "[t]he statute that enables [the Court] to vacate a lower court judgment when a case becomes moot is flexible," *Alvarez v. Smith,* 558 U.S. 87, 94 (2009), and allows the Court to select the outcome "most consonant to justice" in light of the specific facts of a given case, *Bancorp,* 513 U.S. at 24 (citations omitted). That equitable discretion should not be applied in a wooden manner that "deter[s]" public actors from taking "good faith" governmental actions that have the incidental effect of mooting a pending court challenge. 13C Charles Alan Wright et al., *Federal Practice and Procedure* § 3533.10.1, at 583 (3d ed. 2008) (discussing *Board of Regents of the Univ. of Texas Sys. v. New Left Educ. Project*, 414 U.S. 807 (1973)). Indeed, the Supreme Court has vacated decisions under *Munsingwear* where a change in government policy mooted the petition for certiorari.  *See, e.g.,* Order in Pending Case*, Mayorkas v. Innovation Law Lab,* 19-1212

(Monday, June 21, 2021), and *Innovation L. Lab v. Mayorkas*, 5 F.4th 1099, 1100 (9th Cir. 2021) (vacating as moot a preliminary injunction concerning the Migrant Protection Protocols (MPP) where new Presidential administration changed policy); *Biden v. Sierra Club*, 142 S. Ct. 46 (2021) (granting motion to vacate and remand where Department of Defense announced that the challenged funds will not be used for any further construction at the specified border-wall sites).

Equitable principles favor vacatur here. The United States Attorney closed the grand-jury investigation given the Inspector General's commitment to examine the cost overruns in the Federal Reserve's renovation project. By Congressional directive, *see* 5 U.S.C. §412, et seq., the Inspector General plays a special role in detecting fraud and malfeasance within the Federal Reserve. However, the existence of parallel criminal and Inspector General investigations brings risks due to the unique secrecy requirements attendant to matters occurring before the grand jury. *See* Fed. R. Crim. P. 6(e). Closing the grand-jury investigation averts these potential problems. *See* Paul W. Kaufman, *Toward A Safety Valve for Sharing Documents Obtained by Grand Jury Subpoena in Parallel Investigations*, 70 DOJ J. Fed. L. & Prac. 105 (2022) ("By holding off on grand jury processes as long as possible, investigators can proceed in parallel investigations without concern for grand jury secrecy."). Closing the grand-jury investigation also avoids unnecessary duplication of effort. It recognizes the possibility that further criminal charges may be unwarranted depending on the outcome of the Inspector General's probe. Alternatively, the Inspector General's inquiry may lead to criminal charges without need for grand-jury subpoenas or may provide new factual grounds for issuing grand-jury subpoenas that would moot this Court's concerns. Thus, equity favors vacatur because the decision to close the grand-jury investigation stems from prudential considerations rather than any effort to "sidestep appellate review." *Samma,* 136 F.4th at 1115.

Finally, vacatur would not result in any unfairness to the Federal Reserve or Mr. Powell as opposing parties in this litigation. Should the United States Attorney open a new grand-jury investigation, the issuance of any future subpoenas would be based on a different record, one that would presumably include any information generated by the Inspector General's analysis. And, if the Federal Reserve were to object to a hypothetical future subpoena, legal recourse would remain available. *Cf. Moharam v. Transportation Sec. Admin.*, 134 F.4th 598, 608–09 (D.C. Cir. 2025) (appeal was mooted after TSA removed plaintiff from no-fly list; if TSA were to re-list plaintiff based on some other evidence, plaintiff could still challenge that decision).

In short, vacatur "clears the path for future relitigation of the issues between the parties," while preserving "the rights of all parties," and prejudicing none by a decision which has not been tested by the appellate court. *Alvarez,* 558 U.S. at 94.

## CONCLUSION

WHEREFORE, the United States respectfully requests that this Court vacate the memorandum opinions and orders issued in the above-captioned case on mootness grounds.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

G.A. MASSUCCO-LATAIF
Assistant United States Attorney


_____/s/_____
STEVEN VANDERVELDEN
N.Y. Bar # 2191542
Assistant United States Attorney
601 D Street, NW
Washington, D.C. 20530
Steven.Vandervelden@usdoj.gov
(202) 252-7170

9

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have caused a copy of the foregoing to be served by electronic means, through the Court's EFS system, upon counsel for the opposing parties on this 4th day of May 2026.

/s/
STEVEN VANDERVELDEN
Assistant United States Attorney
